DONOVAN, Appellant, v. McDERMOTT, Respondent.

St. Louis Court of Appeals, December 13, 1904.

**SALES: Recission: Statu Quo.** Where one sold one hundred and ninety shares of stock in a corporation for the sum of $10,000, agreeing that the purchase price should be paid to the corporation as a gift, and the purchaser of the stock agreed, in addition to the payment of the $10,000, as a consideration, that the corporation should pay all its debts and change its name, the seller could not maintain an action to rescind the contract after the payment of the money and the discharge of the debts, for the failure of the purchaser to change the corporate name, without making any offer to put the purchaser *in statu quo* by repayment of the $10,000.

Appeal from St. Louis City Circuit Court.—*Hon. R. M. Foster*, Judge.

AFFIRMED.

*Finkelnburg, Nagel & Kirby* for appellant.

(1) Upon the refusal of defendant to perform his part of the contract, plaintiff was entitled to rescind and recover back the consideration with which she had parted. Missouri-Edison Elec. Co. v. Carmody, 72 Mo. App. 534; 21 Am. and Eng. Ency. Law (1 Ed.), p. 44; Bishop on Contracts, secs. 825 and 827. (2) A bill in equity is the only adequate remedy for the recovery of the shares of stock to which plaintiff is entitled, and for an accounting from defendant for dividends or profits received by him thereon. Hagan v. Madison Bank, 81 S. W. (Mo.) 171; 1 Cook on Corp. (4 Ed.), secs. 579, 337 and 338.

*Chester H. Krum* for respondent.

(1) If appellant had a cause of action it occurred at once upon the breach of the contract by the respondent. The breach occurred May 28, 1902. Appellant did not sue until March 19, 1903. To enable one to rescind, the election to rescind or affirm must be made at once upon the breach by the opposite party. Hart v. Handlin, 43 Mo. 171; Robinson v. Siple, 129 Mo. 208, 31 S. W. 788. (2) To enable one to rescind, it is prerequisite that he places the other party *in statu quo*, and the failure to perform by the other party must be a total failure.

GOODE, J.—Appellant filed a bill in equity for the rescission of a certain contract for the sale of shares of stock in the Donovan Commission Company. The foundation of the action is a contract which was entered into by the appellant, the respondent and Edward W. Sinclair, November 28, 1901. That contract is as follows:

"This agreement made and entered into this twenty-eighth day of November, 1901, by and between

Jeanette G. Donovan, party of the first part; Edward W. Sinclair, party of the second part, and Phillip A. McDermott, party of the third part, all of the city of St. Louis and State of Missouri, witnesseth:

"Said party of the first part, Jeanette G. Donovan, hereby agrees to sell to said Phillip A. McDermott, and said Phillip A. McDermott hereby agrees to buy from her, one hundred and ninety shares of the capital stock of the Donovan Commission Company at and for the sum of ten thousand dollars, which said sum is to be paid to her by said Phillip A. McDermott upon the delivery or tender of a certificate or certificates of stock for said shares duly indorsed; and in consideration thereof said party of the first part hereby agrees to pay or deliver said sum of ten thousand dollars irrevocably as a gift or donation to said Donovan Commission Company as soon as the said sum shall be paid to her by said Philip A. McDermott, it being intended hereby that said sum, when so paid or delivered to said Donovan Commission Company shall absolutely belong to said Donovan Commission Company.

"Said Edward W. Sinclair hereby agrees to sell to said Phillip A. McDermott, and said Phillip A. McDermott hereby agrees to buy from him, ninety shares of the capital stock of said Donovan Commission Company at and for the sum of five thousand dollars, the said sum to be paid upon delivery or tender of a certificate or certificates of stock for said shares duly indorsed; and in consideration thereof said Edward W. Sinclair hereby agrees to pay or deliver said sum of five thousand dollars irrevocably and absolutely as a gift or donation to the said Donovan Commission Company as soon as the same shall be paid to him by said Phillip A. McDermott, it being intended hereby that said sum of five thousand dollars, when so paid or delivered to said Donovan Commission Company, shall belong absolutely to said Donovan Commission Company.

"And in consideration of the premises, said Phillip A. McDermott hereby personally agrees with and guarantees to said Jeanette G. Donovan and said Edward W. Sinclair, and each of them, that said Donovan Commission Company will pay all its present liabilities and obligations in full, including a claim of Mary F. Donovan, executrix of Cornelius J. Donovan, for six hundred and sixty-five dollars, and will so pay the same when due; also that said Donovan Commission Company will, within six months from the date hereof, change its name in the manner provided by law, and omit therefrom the name or word 'Donovan.'

"In witness whereof, the parties aforesaid have executed this agreement in triplicate, this twenty-eighth day of November, 1901, one copy hereof being delivered to each of the parties hereof.

"JEANETTE G. DONOVAN,
"EDWARD W. SINCLAIR,
"PHILIP A. McDERMOTT."

McDermott refused to change the name of the corporation after the stock was transferred to him, though, as we gather, he was then the sole owner of the stock. The six months within which he was to have the name changed expired May 28, 1902, and this suit was brought March 19, 1903, nearly a year later. The testimony showed that McDermott paid the appellant ten thousand dollars for her stock and she turned the money over to the Donovan Commission Company; that the same thing happened in respect to the five thousand dollars paid Sinclair; that afterwards the commission company paid all its liabilities and obligations in full, including the claim of Mary J. Donovan as executrix of Cornelius J. Donovan; that McDermott was frequently asked to have the name of the corporation changed, but never did. The appellant set out in her petition the facts substantially as we have stated them and asked the court to declare the agreement between

her and the respondent cancelled and rescinded and that
the one hundred and ninety shares of stock which she
transferred to the respondent be restored to her with
the profits realized by the respondent thereon.   The
answer was a general denial.

At the conclusion of the testimony the circuit court
dismissed the appellant's bill, or entered a judgment
equivalent to that ruling.

A great deal is said in the briefs about McDermott's obligation to the appellant and Sinclair being a
joint one on which appellant had no separate right of
action.   As McDermott undertook and agreed with appellant and Sinclair separately, to carry out his covenants, we are inclined to doubt the soundness of that
proposition.   It is true there was but one writing; but
it embodied, in effect, two agreements, one between the
appellant and McDermott, and one between Sinclair
and him.   And McDermott personally agreed and guaranteed with each of them, according to the language of
the instrument, that he would carry out his undertaking.

The obstacle in the way of granting the relief appellant asks is that there was no previous offer to restore to McDermott the consideration he paid appellant
for the shares of stock—to put him *in statu quo*.   Jarrett v. Morton, 44 Mo. 275.   Her counsel contend that
she got nothing of value, inasmuch as the ten thousand
dollars paid her were immediately turned over to the
corporation, and, therefore, she had nothing in her
hands to restore to McDermott.   But McDermott parted
with something of value and if she waited until it was
out of her power to place him *in statu quo*, her action
is not maintainable.   Brockhaus v. Schilling, 52 Mo.
App. l. c. 81.   It is idle to say the sole consideration
which induced her to sell the stock was McDermott's
undertaking to have the name of the corporation
changed.   The instrument itself recites that in consideration of the sale of their shares by her and Sinclair

to McDermott, the latter guaranteed that the Donovan Commission Company would pay all its liabilities and obligations in full, including the claim of Mary J. Donovan as executrix. No doubt the consideration of an instrument may be inquired into and the true consideration ascertained even if it is different from the one recited. But the testimony of appellant herself, fairly considered, leads irresistibly to the conclusion that a part, if not the chief part of the consideration for her transfer of the shares, was McDermott's guarantee that the commission company should pay its debts. The court excluded her offered statement that the sole consideration for the shares was the agreement to change the name of the company. That may, or may not, have been the element of the consideration which influenced her most; but certainly it can not be held to have been the whole consideration, since she stated herself that McDermott paid ten thousand dollars in cash and guaranteed that the company would discharge its debts. This guarantee was fulfilled. The company paid all its debts. Whether they were more or less than the price of the shares of stock McDermott bought, does not appear; nor does it appear whether McDermott had to take any cash from his own pocket to discharge those obligations, or found the assets of the company sufficient. What is certain is, that McDermott paid the appellant ten thousand dollars and that she does not offer to restore this sum or any part of it, preliminary to having the contract for the sale of the shares rescinded. Suppose her prayer should be granted, what situation would we have? McDermott as an individual would be out both the ten thousand dollars and the shares of stock, while the appellant would have her shares back and the company its debts paid. The money paid by McDermott would inure to her benefit as a shareholder, without her being out a cent, and to his benefit only as the holder of other shares which he did not get from her. It is no answer to say that he got it back when

appellant returned the ten thousand dollars to the corporation; of which, as we take it, he is the sole stockholder, though that was not clearly shown. He would cease to be the sole stockholder if she reacquired her shares by a decree. The appellant got a large sum of money from McDermott and if she wants to cancel the trade, it is her duty to offer to restore the price she received for the shares.

The judgment is affirmed. All concur.